**Papetti Samuels Weiss McKirgan LLP**
Scottsdale Quarter
15169 North Scottsdale Road
Suite 205
Scottsdale, AZ 85254

**Bruce Samuels** (State Bar No. 015996)
Direct Dial: 480.800.3530
Email: bsamuels@PSWMlaw.com

**Hannah Dolski** (State Bar No. 034793)
Direct Dial: 480.800.3534
Email: hdolski@PSWMlaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Avid Telecom, LLC, an Arizona limited liability company; Michael Lansky, an individual, | Case No. |
| | **COMPLAINT** |
| Plaintiffs, | |
| v. | |
| David Frankel, an individual; ZipDX, LLC, a Utah limited liability company, | |
| Defendants. | |

Plaintiffs Avid Telecom, LLC ("Avid Telecom") and Michael Lansky ("Lansky"), by and through their undersigned attorneys ("Avid Telecom" and "Lansky" are together referred to as the "Plaintiffs"), for their complaint against David Frankel ("Frankel") and ZipDX, LLC ("ZipDX") ("Frankel" and "ZipDX" are together referred to as the "Defendants") allege as follows:

## **PARTIES**

1.      Avid Telecom is an Arizona limited liability company with its principal place of business in Tucson, Arizona. Avid Telecom operates as a common carrier provider of long-distance telecommunications services.

2.      Avid Telecom has one member: Lansky.

3.      Lansky is an adult individual and a resident of Tucson, Arizona. Lansky is the CEO of Avid Telecom.

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

4.      ZipDX is a Utah limited liability company with a primary office location at 2230 W. Acowa Circle, St. George, Utah. On information and belief, the company's primary business is offering variety of audio conference calling (aka audio bridge) and simultaneous translation services

5.      On information and belief, ZipDX has one member: Frankel.

6.      Frankel is an adult individual. On information and belief, Frankel resides at 2230 W. Acowa Circle, St. George, Utah. On information and belief, Frankel is the sole owner and Chief Executive Officer of ZipDX.

7.      Among other things, ZipDX and/or Frankel controls numerous telephone numbers (aka "Direct Inward Dial" numbers or "DIDs") with Arizona area codes that are used to terminate calls in Arizona. On information and belief, these DIDs have been used by ZipDX and by Frankel in support of the illegal activities identified in this complaint.

**JURISDICTION AND VENUE**

8.      This Court has personal jurisdiction over Defendants ZipDX and Frankel because (i) ZipDX and Frankel have purposefully directed their tortious activities against Avid Telecom, an Arizona LLC, and Lansky, an Arizona resident, to the State of Arizona, knowing that the effect of such tortious activities would most significantly be felt in Arizona by Plaintiffs and thereby intended to, and did in fact, cause injury within the forum; (ii) Plaintiffs' claims all arise out of Defendants' purposeful and unlawful conduct; (iii) both ZipDX and Frankel engaged in substantial business activities within the State of Arizona; (iv) Defendants have advertised goods and services in the State of Arizona through ZipDX's website and other means; (v) on information and belief, ZipDX has sold its services to entities located within the State of Arizona; and (vi) the Court's exercise of jurisdiction is reasonable. The specific facts supporting these allegations are set forth below and incorporated herein.

9.      This Court has jurisdiction over the claims and venue is proper pursuant to 28 U.S.C. §§ 1391 and 1332 because: (1) Avid Telecom is an Arizona LLC with its principal place of business in Tucson, Arizona, and its witnesses are either located in

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

1   Tucson or available in Tucson; (2) Lansky is an Arizona resident; (3) ZipDX is a Utah

2   LLC with its principal place of business in St. George, Utah; (4) Frankel is a Utah

3   resident; (5) the amount in controversy exceeds $75,000.00; (6) there are no matters

4   pending between the parties in any other jurisdictions; and (7) ZipDX and Frankel

5   targeted their conduct at Arizona.

6          10.    The exercise of personal jurisdiction over ZipDX and Frankel by this

7   Court is proper because the conduct that is the basis of this action and for which Avid

8   Telecom and Lansky are seeking compensation was targeted to Arizona and its impact

9   was most significantly felt by the Arizona LLC and Arizona resident in Arizona.

10                            **FACTUAL ALLEGATIONS**

11                          **The Robocalling Industry**

12          11.    Robocalling is generally defined as the placement of a phone call that uses

13   a computerized autodialer to deliver a pre-recorded message. Although the term

14   "robocalling" has negative connotations, most robocalls are legal.

15          12.    A call is only an illegal robocall only where it is placed using a

16   computerized autodialer **and** the message is prerecorded (*i.e.,* the message is not

17   delivered via a live human voice). Calls that do not meet **both** criteria are entirely legal.

18          13.    In addition, even where the call is placed using a computerized autodialer

19   **and** the message is prerecorded, the call is entirely legal if it comes from a caller that is

20   exempted from an applicable telemarketing statute (*e.g.,* a political campaign calling a

21   landline telephone) or where the party receiving the call has agreed in advance to receive

22   the call by providing a proper opt-in. These customers, which constitute a large

23   percentage of robocall recipients, include persons who, for example, have opted-in to

24   receive authorized notifications from doctors, pharmacies or delivery services, and

25   parents opting into a school emergency notification service.

26          14.    Avid Telecom's contracts with each of its customers require the customer

27   to only send legal calls to Avid Telecom.

28

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

**Avid Telecom's Efforts to Transmit Only Legal Robocalls.**

15. Avid Telecom carefully limits the calls that it transmits to legal robocalls.

16. Avid Telecom operates in a manner that is fully compliant with and often exceeds all applicable federal and state laws and regulations.

17. Avid Telecom intentionally does not do business with international companies, as they are known to deliver much of the illegal robocall traffic in the United States, promptly terminates its contracts with individuals and entities that attempt to use Avid Telecom's services in an unlawful manner, and regularly, and repeatedly over many years, cooperates with state and federal authorities seeking information and assistance.

18. Avid Telecom is an industry-leader in the effort to thwart illegal robocalling.

19. Avid Telecom has already implemented all industry-accepted robocalling mitigation requirements. Avid Telecom has filed a comprehensive and fully compliant Robocall Mitigation Plan (the "Plan") with the Federal Communications Commission. That Plan includes a description of the automatic processes in place that block calls prior to them hitting the routing engine in Avid Telecom's switch. Among the essential elements of that Plan are the following:

    a.     Avid Telecom blocks calls with an invalid caller ID.

    b.     Avid Telecom blocks calls with matching originating and terminating numbers.

    c.     Avid Telecom blocks calls from blacklisted media Internet Protocol ("IP") communications (*i.e.*, media IPs that are known to have been used for scams, such as for government and corporate impersonation.).

    d.     Avid Telecom blocks calls from phone numbers that are known to be used for spoofing.

    e.     Avid Telecom generally blocks, on a real-time basis, Automatic

1  Number Identifications ("ANI," *i.e.,* telephone numbers) that
2  produce less than 5% Answer Seizure Ratio ("ASR"), have a 5
3  second or less Average Call Duration ("ACD"), and any number
4  with greater than 60% short duration calls (calls of 6 seconds or
5  less).

6  f.     Avid Telecom blocks calls from wireless ANIs unless the customer
7         is a wireless carrier.

8  g.     Avid Telecom blocks calls that have been labeled as "almost
9         certainly" spam.

10 h.     Avid Telecom blocks calls that are labeled as "scam."

11 20.    Avid Telecom has implemented fully compliant "Know Your Customer"
12 procedures.

13 21.    For all new customers, Avid Telecom requires the completion of a
14 Customer Information Form. Avid Telecom's questions to its new customers include,
15 among other things, verification of compliance with tracebacks, a description of their
16 vetting process for new customers, and actions taken when fraudulent customers are
17 found. All requested information in the Customer Information Form must be supplied
18 and completed in order for Avid Telecom to do business with them.

19 22.    Among other internal processes and procedures, Avid Telecom requires
20 that all new wholesale customers have the following:

21 FCC 499 Filer ID

22 FCC Registration Number ("FRN")

23 Trade references from respected sources

24 A STIR/SHAKEN compliance plan as filed in the Robocall Mitigation
   Database
25 Bank references

26 State of incorporation

27 Federal tax ID

28

5

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

An understanding of the type(s) of traffic that they will deliver

Identified company responsible parties

A signed Master Service Agreement (MSA) with Avid Telecom

Proof of federal Universal Service Fund ("FUSF") compliance for the current year

Verification of a filed Robocall Mitigation Plan

23.     In addition to the above, applications from non-US carriers attempting to terminate traffic in the USA are denied unless they come from a known and respected international company.

24.     Avid Telecom is in full STIR/SHAKEN compliance.

25.     STIR/SHAKEN are acronyms for the Secure Telephone Identity Revisited (STIR) and Signature-based Handling of Asserted Information Using toKENs (SHAKEN) standards. For a common carrier provider to be in complete STIR/SHAKEN compliance, all calls traveling through the common carrier provider's interconnected phone networks must have their caller ID "signed" as legitimate by originating carriers and validated by other carriers before reaching consumers.

26.     STIR/SHAKEN digitally validates the handoff of phone calls passing through the complex web of networks, allowing the phone company of the consumer receiving the call to verify that the call is in fact from the number displayed on Caller ID.

27.     Avid Telecom upgraded its switching platform—well in advance of the applicable deadline—to comply with the FCC's STIR/SHAKEN mandate to accept and accurately transmit all STIR/SHAKEN data it receives in a call path.

28.     Avid Telecom voluntarily implemented enhanced monitoring services.

29.     Avid Telecom spends at least $400,000 each year to purchase enhanced switch data services from its switch provider that allow it to identify illegal calls and to terminate the providers of those calls.

30.     Avid Telecom purchases these enhanced switch data services annually so that it can better identify and to block illegal calls.

31.     Avid Telecom voluntarily obtains and pays for these enhanced services, which are not required (as a matter of law or regulation) to process its calls.

32.     Avid Telecom is regulatorily compliant in all other areas of its operations, including maintaining the required FCC Filer ID and the timely payment of all FCC 499 and USF obligations.

**Frankel and ZipDX's Attempts to Harm Avid Telecom and Lansky.**

33.     Frankel is a self-anointed robocalling vigilante.

34.     Frankel does not have, nor has he ever had, any legal authority to create, interpret, or enforce any state or federal policy, law, or regulation of any kind or on any issue, including robocalling.

35.     Frankel is on a quest to destroy the reputations of telecommunications carriers that he unilaterally deems as noncompliant with his own metrics for compliance with applicable laws and regulations related to robocalling.

36.     Frankel, directly and through his company ZipDX, has engaged in a relentless and cynical pattern of libel and slander against Avid Telecom, repeatedly accusing the company of illegal activity on a massive scale.

37.     Not only has Frankel defamed Avid Telecom to trade associations, business groups in the telecom industry, and the public at large, but he has also undertaken a campaign, both direct and indirect, to encourage numerous federal agencies and state law enforcement officials to commence economically crippling investigations and enforcement actions against Avid Telecom, which have been specifically predicated on Defendants' false and defamatory statements.

38.     Frankel and ZipDX have also simultaneously mounted a campaign, both direct and indirect, designed to force customers of, and vendors to, Avid Telecom to terminate their business relationships with the company.

39.     Frankel has used his public platform to promote ZipDX as a provider of consulting services and a software program that purports to identify and thereby to limit the number of illegal robocalls to a variety of governmental and private clients.

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

7

40.    Avid Telecom and Lansky have learned that the decision not to purchase Defendants' software program brings serious negative consequences. When Avid Telecom failed to respond promptly and positively to Defendants' solicitation, it was promptly, specifically, and directly targeted by Defendants with, inter alia, a campaign of defamatory statements to high profile telecommunications associations and forums as well as specific and direct demands that Avid Telecom's key customers cease doing business with the company.

41.    On information and belief, for a number of years, Frankel has been making presentations to federal and state agencies and attorneys general—sometimes in coordination with others—claiming that various carriers are transiting illegal robocalls. In so claiming, Frankel has specifically identified Avid Telecom as one such carrier.

42.    Avid Telecom does not know whether any of the other carriers identified by Frankel are engaged in this misconduct.

43.    As they relate to Avid Telecom, Frankel's statements that it is transmitting illegal robocalls are demonstrably and provably false and defamatory.

44.    On information and belief, much of the data that Frankel is presenting to these state and federal agencies and officials has been obtained by improper and/or illegal means, such as the unlawful taking and using of data obtained from third parties and the illegal recording of telephone calls.

45.    Like any other private citizen, Frankel has the right to state his opinions to state and federal regulators and to the public.

46.    Like any other private citizen, Frankel does not have the privilege to knowingly make false and defamatory statements to state and federal regulators or to the public.

47.    On information and belief, Frankel is the highest profile national advocate against illegal robocalling.

48.    On information and belief, state and federal authorities across the nation rely on Frankel to provide critical data relating to illegal robocalling and those

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

1  authorities often predicate enforcement actions against carriers like Avid Telecom

2  specifically on that that data.

3       49.    On information and belief, at least two state attorneys general—Ohio and

4  Indiana—have issued exceptionally broad and burdensome Civil Investigative Demands

5  to Avid Telecom based on the data and false and misleading representations made to

6  them by Frankel.

7       50.    The Indiana Attorney General stated that Avid Telecom is the "target" of

8  its investigation.

9       51.    On information and belief, the Indiana Attorney General's investigation is

10 based on false and misleading information provided by Frankel.

11      52.    Among the false and defamatory statements made by Frankel are the

12 following:

13           a.    *STIR/SHAKEN Enterprise Summit*. On or about Tuesday, October

14                 18, 2022 (during the period from approximately 4:00 to 5:00 pm),

15                 Frankel made a presentation titled, "A live STIR/SHAKEN Report

16                 from the Real World of Robocalls" which included a slide

17                 presentation in which he falsely stated that calls transited by Avid

18                 Telecom are "illegal."

19           b.    *SOMOS TF Conference Call*. On or about October 19, 2022,

20                 Frankel stated that Avid Telecom is "the top offender" for calling

21                 from invalid ANI's and/or not sending calls with valid

22                 STIR/SHAKEN (S/S) headers. On that same call, Frankel also

23                 stated that Avid Telecom "signed" the calls with an "Attestation A,"

24                 which he claimed is not the correct "Attestation." On these bases,

25                 Frankel asserted that the majority of the calls transited by Avid

26                 Telecom calls are illegal.

27           c.    *Inaccurate Representations of Illegal Robocalls Based on*

28                 *Traceback Reports*. On information and belief, on repeated

occasions in 2022, Frankel has told state attorneys general in Ohio and Indiana (and likely in other states) that Avid Telecom transmitted an illegal robocall, based on Frankel's review of a report by the Traceback Group (the "Avid Telecom Traceback"). The Traceback Group is an investigative organization authorized by the federal TRACED Act that receives notice about calls that are flagged as potentially illegal robocalls. The Traceback Group maintains a database with all such calls. The Traceback Group notifies the carriers of the flagged calls, and the carriers (such as Avid Telecom) may provide the Traceback Group with evidence that the flagged call was a legal robocall. On various occasions, the Traceback Group has notified Avid Telecom of a flagged call. Often, Avid Telecom will respond to the Traceback Group and provide evidence that the call was associated with a proper opt-in and was a legal call. Notwithstanding evidence that the call was lawful, the Traceback Group does not remove the Traceback from its database nor does it notate that the Traceback was fully resolved and that the call was lawful.[1] Rather, in each instance following the interaction with Avid Telecom where a Traceback was issued and resolved, the database continues merely to reflect the existence of the Traceback.

d.    On information and belief, Mr. Frankel is aware of the Traceback process and that Tracebacks—specifically including Tracebacks issued to Avid Telecom—are often resolved with the conclusion that the subject call was entirely proper. Yet, on repeated occasions

---

[1] Avid Telecom has advised the Traceback Group of this issue and asked that it be corrected, *inter alia*, to prevent the improper implication that all Tracebacks represent illegal calls, the baseless legal proceedings that are predicated on this false implication, and the reputational and economic harm that necessarily results. To date, the Traceback Group has not taken any steps to address this issue.

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

in 2022, Frankel has accessed the Traceback database[2] and utilized Traceback data to support representations to state attorneys general that all the calls associated with Avid Telecom Tracebacks were illegal robocalls. Moreover, on information and belief, Mr. Frankel has told the state attorneys general in Ohio and Indiana (and likely other states)—without empirical basis in fact—that for every robocall associated with an Avid Telecom Traceback, there are many thousands more illegal robocalls that are not the subject of a Traceback investigation.

53. The STIR/SHAKEN Summit is a major gathering of leaders, described as "a must-attend event for operational personnel and engineers from service providers of all stripes, for individuals who are responsible for managing Enterprise communications operations." *See* SIP Forum[3]STIR/SHAKEN Enterprise Summit Overview at https://www.sipforum.org/news-events/stir-shaken-enterprise-summit-overview/.

54. Attendees of the STIR/SHAKEN Summit include leaders from every corner of the telecom industry, including, "Telcos, Major Backbone Providers, Interconnect and Wholesale Solution Providers, ISPs, ITSPs (Internet Telephony Service Providers), Cable Operators, Hosted and Managed Service Providers, Wireless Network Operators, International PTTs, Enterprises, Customer Care and Contact Center Operators, Data Analytics Companies, Application Providers, Government Agencies and Regulators, Regulatory attorneys with State and Federal Jurisdictions, Equipment Manufacturers and Mobile Product Developers, Device Integration Specialists, and

---

[2] On information and belief, in at least some circumstances, Frankel's access to the Traceback database has been without proper authorization and/or in violation of law. On further information and belief, Mr. Frankel has utilized other unlawful and/or improper means—including without limitation the unlawful recording of inbound calls—to gather data which he has used to support false and defamatory allegations about Avid Telecom.

[3] The SIP Forum is described on its website (https://www.sipforum.org/activities/technical-wg-overview-and-charter/vrs-task-group-charter/) as "an industry association with members from the leading IP communications companies. Its mission: To advance the adoption and interoperability of IP communications products and services based on SIP."

Enterprise Service Assurance and IT/communications Staff." *See* SIP Forum STIR/SHAKEN Enterprise Summit Overview at https://www.sipforum.org/news-events/stir-shaken-enterprise-summit-overview/.

55.     Because of the audience, the presentation of false and defamatory statements to the STIR/SHAKEN Summit is an effective means of defaming a telecom carrier, such as Avid Telecom, to the entire telecommunications industry.

56.     SOMOS is a global provider of telephone number and identity information services.

57.     On authority granted by the Federal Communications Commission, SOMOS oversees all telephone numbers (over 7 billion) used in North America.

58.     SOMOS' responsibilities include the management of national and international registries like the North American Numbering Plan ("NANP"), Toll-Free Number Registry ("TFNR") and the Reassigned Numbers Database ("RND").

59.     SOMOS also offers a robust set of anti-fraud solutions, aimed at protecting consumer trust in telecom.

60.     The SOMOS TF Conference Call is a widely attended event of industry leaders.

61.     While participating on this call, and aware of its other participants, Frankel described Avid Telecom as "the top offender" for calling from invalid ANIs and accused Avid Telecom of sending calls with invalid STIR/SHAKEN headers and signing calls with an improper attestation.

62.     Like the STIR/SHAKEN Summit, Frankel's decision to use this forum to make false allegations about Avid Telecom further confirms that it was his intention to cause the maximum possible harm to Avid Telecom's business and personal reputations.

63.     On information and belief, in addition to the known false and defamatory statements identified above, Frankel has engaged in a long-term, calculated plan to defame Avid Telecom to multiple state attorneys general; the Traceback Group, the organization designated by the Federal Communications Commission to investigate

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

1    robocalls; and to third party providers of telecommunications services.

2        64.    Several attorneys general have specifically stated that their belief that Avid

3    Telecom is involved in illegal robocalling is based on information provided by third

4    parties. The statements made by these attorneys general closely mirror Frankel's

5    allegations in both substance and word choice.

**FIRST CLAIM FOR RELIEF**

**(Defamation – Avid Telecom)**

8        65.    Avid Telecom and Lansky incorporate each of the above paragraphs as if

9    fully set forth herein.

10       66.    Frankel personally, and through ZipDX, published, caused to publish, or

11   reasonably could have foreseen the publication of, a series of false statements about

12   Avid Telecom to members of the telecommunications industry in public forums.

13       67.    On information and belief, Frankel personally, and through ZipDX,

14   published, caused to publish, or reasonably could have foreseen the publication of, a

15   series of false statements about Avid Telecom to state attorneys general, federal

16   regulatory authorities and their surrogates, including without limitation the Traceback

17   Group and various third-party service providers or vendors in the telecommunications

18   industry.

19       68.    These false statements included specific allegations that Avid Telecom was

20   involved in the transmission of illegal robocalls on a massive scale.

21       69.    Each of these statements was made with actual malice, that is, with actual

22   knowledge of its falsity or with reckless disregard for the truth.

23       70.    Defendants' actual malice is evidenced, inter alia, by the fact that the pace

24   of the defamatory statements increased dramatically after Avid Telecom failed to

25   respond to multiple offers by Defendants to sell the ZipDX software to Avid Telecom.

26       71.    It was reasonable and foreseeable, and in many cases the intended

27   consequence of these statements, that they would be repeated, republished, and amplified

28   by third parties, including by state attorneys general.

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

72.     It was reasonable and foreseeable, and in many cases the intended consequence of these statements, that they would cause state attorneys general to pursue claims against Avid Telecom.

73.     It was reasonable and foreseeable, and in many cases the intended consequence of these statements, that they would cause providers, and customers of, Avid Telecom to cease doing business with Avid Telecom.

74.     Defendants have failed to correct the false statements of fact that they have published or to retract these statements upon demand by Avid Telecom and Lansky.

75.     Because the false statements made by Defendants were directed at the business of Avid Telecom and Lansky and bring Avid Telecom and Lansky into disrepute, contempt, or ridicule, and impeach their honesty, integrity, virtue, and/or reputation, they constitute defamation per se.

76.     Defendants' false statements have been made directly to, viewed and/or heard by hundreds or potentially thousands of persons, including federal regulatory agencies and their surrogates, multiple state law enforcement officials, key decision-makers in the telecom industry, and multiple service providers and customers of Avid Telecom.

77.     On information and belief, the Defendants were financially motivated to publish the false statements because of their personal, financial interest in selling the ZipDX software that purports to help identify illegal robocalling.

78.     Defendants had no applicable privilege or legal authorization to make any of the false or defamatory statements about Avid Telecom and Lansky or, if they did, they abused that privilege in a manner that rendered it null and void.

79.     Defendants' false statements have already directly caused Avid Telecom to lose its business relationships with two critical and long-standing customers.

80.     As a direct and proximate result of the unlawful actions of Defendants, Avid Telecom and Lansky have suffered, and will continue to suffer, damages in an amount to be proven at trial but reasonably believed to be in excess of multiple millions

1   of dollars.

2   81.   Defendants' conduct was willful, malicious and oppressive and was

3   undertaken with deliberate disregard for Plaintiffs' rights and the impact that

4   Defendants' conduct would have on Plaintiffs' business and personal reputations.

5   Plaintiffs are therefore entitled to an award of exemplary and punitive damages, which

6   they so request.

7                           **SECOND CLAIM FOR RELIEF**

8                  **(False Light Invasion of Privacy – Michael Lansky)**

9   82.   Avid Telecom and Lansky incorporate each of the above paragraphs as if

10  fully set forth herein.

11  83.   Lansky is a private figure.

12  84.   Frankel personally, and through ZipDX, published, caused to publish, or

13  reasonably could have foreseen the publication of a series of false statements about

14  Lansky including by and through ZipDX's agents, by Frankel making the statements

15  himself, and by both republishing and failing to retract the statements.

16  85.   These statements included specific allegations that Avid Telecom, through

17  the actions of its CEO, Lansky, was involved in the transit of illegal robocalls on a

18  massive scale.

19  86.   At the time that these false statements were made, the legal name of Avid

20  Telecom was Michael Lansky dba Avid Telecom, LLC. On information and belief,

21  Defendants were aware of this name.

22  87.   When Defendants published, caused to publish, or reasonably could have

23  foreseen the publication of, a series of false statements about Avid Telecom, they knew

24  or could have reasonably foreseen that the false allegations of illegal conduct made

25  against Avid Telecom would also be associated with Lansky.

26  88.   Since Defendants started making false statements, Lansky has received

27  angry, direct communications referencing the contents of these false statements.

28  89.   Each of these statements was made with actual malice, that is, with actual

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

knowledge of its falsity or with reckless disregard for the truth.

90.     Defendants' actual malice is evidenced, inter alia, by the fact that the pace of the defamatory statements increased dramatically after Avid Telecom failed to respond to multiple offers by Defendants to sell its software to Avid Telecom.

91.     It was reasonable and foreseeable, and in many cases the intended consequence of these statements, that they would be repeated, republished and amplified by third parties, including by state attorneys general.

92.     It was reasonable and foreseeable, and in many cases the intended consequence of these statements, that they would be the cause in fact of decisions by state attorneys general to hold Lansky in a bad light and, on that basis, to pursue claims against Lansky's company, Avid Telecom.

93.     It was reasonable and foreseeable, and in many cases the intended consequence of these statements, that they would cause providers to, and customers of, Avid Telecom to hold Lansky in a bad light and, on that basis, to cease doing business with the company that Lansky controlled.

94.     Defendants have failed to correct or retract the false statements of fact that they have published upon demand by Lansky and Avid Telecom. Instead, they have continued to amplify those statements.

95.     Because the false statements made by Defendants were directed at Lansky in the conduct of his business, and bring Lansky into disrepute, contempt, or ridicule, and impeach his honesty, integrity, virtue, and/or reputation, they constitute defamation per se.

96.     Defendants' false statements have been made directly to, viewed and/or heard by thousands and, potentially tens of thousands of persons, including the staff of federal regulatory agencies and their surrogates, the staffs of multiple state law enforcement officials, key decision-makers in the telecom industry, and multiple service providers and customers of Avid Telecom.

97.     On information and belief, Defendants were financially motivated to

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

publish the false statements because of their personal, financial interest in selling the ZipDX software that purports to help identify illegal robocalling.

98.     On information and belief, Defendants were further financially motivated to publish the false statements because of the opportunity to generate significant revenue through the provision of consulting services to various state attorneys general. Defendants intended to encourage these state attorneys general to engage Defendants as consultants to address the misbehavior in which Avid Telecom and Lansky were allegedly engaged.

99.     Defendants had no applicable privilege or legal authorization to make any of the false or defamatory statements about Lansky, or if they did, they abused that privilege in a manner that rendered it null and void.

100.     Defendants' false statements have already caused significant damage to Lansky's reputation. As a direct consequence of this, Avid Telecom has lost its critical and long-standing business relationships with service providers.

101.     As a direct and proximate result of Defendants' unlawful actions, Lansky has suffered, and will continue to suffer, damages in an amount to be determined at trial but reasonably believed to be in excess of multiple millions of dollars.

102.     Defendants' conduct was willful, malicious and oppressive and was undertaken with deliberate disregard for Lansky's rights and the impact that Defendants' conduct would have on Lansky's business and personal reputations. Lansky is therefore entitled to an award of exemplary and punitive damages, which he so requests.

**THIRD CLAIM FOR RELIEF**

**(Tortious Interference with Business Relationship – Inteliquent)**

103.     Avid Telecom and Lansky incorporate each of the above paragraphs as if fully set forth herein.

104.     Avid Telecom was party to an agreement with Inteliquent. Under the terms of that agreement, Avid Telecom transmitted calls to Inteliquent which either passed the call on to another downstream carrier or terminated the call to intended recipient of the

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

call.

105.    Defendants knowingly made and published false statements about Avid Telecom and Lansky that they knew, or should have known, would be discovered by Inteliquent.

106.    The publication of these false statements was wrongful and without right or privilege.

107.    At a minimum, the publication of these statements reflected Frankel and ZipDX's gross negligence, and they may have also reflected their willful intention to injure.

108.    Defendants knew or should have known that Avid Telecom had, and valued, its business relationships with carriers and customers.

109.    Defendants knew or should have known that the publication of the false statements would place Avid Telecom's business relationships with its carriers and customers in jeopardy.

110.    Following the publication of the false statements by Frankel and ZipDX, Avid Telecom received a letter from Inteliquent advising that it was terminating its relationship with Avid Telecom.

111.    In a direct communication between Avid Telecom and Inteliquent, Inteliquent confirmed that it was terminating the relationship because of allegations that Avid Telecom was engaging in illegal robocalling.

112.    Avid Telecom derived a substantial economic benefit from its business relationship with Inteliquent.

113.    As a direct and proximate result of Defendants' tortious interference, Avid Telecom and Lansky have suffered, and will continue to suffer, damages in an amount to be determined at trial but reasonably believed to be in excess of multiple millions of dollars.

114.    Defendants conduct was willful, malicious and oppressive and was undertaken with deliberate disregard for Avid Telecom's rights and the impact that

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

18

1   Defendants' conduct would have on Avid Telecom's business. Avid Telecom is

2   therefore entitled to an award of exemplary and punitive damages, which it so requests.

3                              **FOURTH CLAIM FOR RELIEF**

4                **(Tortious Interference with Business Relationship – NUSO)**

5          115.   Avid Telecom and Lansky incorporate each of the above paragraphs as if

6   fully set forth herein.

7          116.   Avid Telecom was party to an agreement with NUSO. Under the terms of

8   that agreement, Avid Telecom transmitted calls to NUSO which either passed the call on

9   to another downstream carrier or terminated the call to the intended recipient of the call.

10         117.   Defendants knowingly made and published false statements about Avid

11  Telecom and Lansky that they knew, or should have known, would be discovered by

12  NUSO.

13         118.   The publication of these false statements was wrongful and without right

14  or privilege.

15         119.   At a minimum, the publication of these statements reflected Frankel and

16  ZipDX's gross negligence, and it may have also reflected their willful intention to injure.

17         120.   Defendants knew or should have known that Avid Telecom had, and

18  valued, its business relationships with carriers and customers.

19         121.   Defendants knew or should have known that the publication of the false

20  statements would place Avid Telecom's business relationships with its carriers and

21  customers in jeopardy.

22         122.   Following the publication of the false statements made by Frankel and

23  ZipDX, Avid Telecom received a letter from NUSO advising that it was terminating its

24  relationship with Avid Telecom.

25         123.   In a direct communication between Avid Telecom and NUSO, NUSO

26  confirmed that it was terminating the relationship because of allegations that Avid

27  Telecom was engaging in illegal robocalling.

28         124.   Avid Telecom had derived a substantial economic benefit from its business

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

relationship with NUSO.

125.    As a direct and proximate result of Defendants' tortious interference, Avid Telecom and Lansky have suffered, and will continue to suffer, damages in an amount to be determined at trial but reasonably believed to be in excess of multiple millions of dollars.

126.    Defendants' conduct was willful, malicious and oppressive and was undertaken with deliberate disregard for Avid Telecom's rights and the impact that Defendant's conduct would have on Avid Telecom business. Avid Telecom is therefore entitled to an award of exemplary and punitive damages, which it so requests.

### FIFTH CLAIM FOR RELIEF

### (Tortious Interference with Prospective Economic Advantage – Inteliquent)

127.    Avid Telecom and Lansky incorporate each of the above paragraphs as if fully set forth herein.

128.    Avid Telecom was party to an agreement with Inteliquent. Under the terms of that agreement, Avid Telecom delivered calls to Inteliquent which either passed the call on to another downstream carrier or terminated the call to the called party.

129.    Defendants knowingly made and published false statements about Avid Telecom and Lansky that they knew, or should have known, would be discovered by Inteliquent.

130.    The publication of these false statements was wrongful and without right or privilege.

131.    At a minimum, the publication of these statements reflected Frankel and ZipDX's gross negligence, and it may have also reflected their willful intention to injure.

132.    Defendants knew or should have known that Avid Telecom had, and valued, its business relationships with carriers and customers.

133.    Defendants knew or should have known that the publication of the false statements would place Avid Telecom's business relationships with its carriers and customers in jeopardy.

20

134. Following the publication of the false statements by Frankel and ZipDX, Avid Telecom received a letter from Inteliquent advising that it was terminating its relationship with Avid Telecom.

135. In a direct communication between Avid Telecom and Inteliquent, Inteliquent confirmed that it was terminating the relationship because of allegations that Avid Telecom was engaging in illegal robocalling.

136. Not only had Avid Telecom derived a substantial economic benefit from its business relationship with Inteliquent, Avid Telecom reasonably expected to continue to derive a growing economic advantage into the future.

137. In addition to the continuing economic value of the existing relationship, before Inteliquent discovered the defamatory statements, Avid Telecom and Inteliquent had agreed in principle to the terms of a significantly expanded relationship which would have substantially increased the volume of traffic transmitted by Avid Telecom to Inteliquent and thus the economic value of the parties' relationship.

138. When Inteliquent terminated its existing agreement with Avid Telecom, it also made it known that it would not be executing the new agreement.

139. As a direct and proximate result of Defendants' tortious interference, Avid Telecom and Lansky have suffered, and will continue to suffer, damages in an amount to be determined at trial but reasonably believed to be in excess of multiple millions of dollars.

140. Defendants' conduct was willful, malicious and oppressive and was undertaken with deliberate disregard for Avid Telecom and Lansky's rights and the impact that Defendant's conduct would have on their business. Avid Telecom and Lansky are therefore entitled to an award of exemplary and punitive damages, which it so requests.

**SIXTH CLAIM FOR RELIEF**

**(Tortious Interference with Prospective Economic Advantage – NUSO)**

141. Avid Telecom and Lansky incorporate each of the above paragraphs as if

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

fully set forth herein.

142.    Avid Telecom was party to an agreement with NUSO. Under the terms of that agreement, Avid Telecom transmitted calls to NUSO which either passed the call on to another downstream carrier or terminated the call to the intended recipient of the call.

143.    Defendants knowingly made and published false statements about Avid Telecom and Lansky that they knew, or should have known, would be discovered by NUSO.

144.    The publication of these false statements was wrongful and without right or privilege.

145.    At a minimum, the publication of these statements reflected Frankel and ZipDX's gross negligence, and it may have also reflected their willful intention to injure.

146.    Defendants knew or should have known that Avid Telecom had, and valued, its business relationships with carriers and customers.

147.    Defendants knew or should have known that the publication of the false statements would place Avid Telecom's business relationships with its carriers and customers in jeopardy.

148.    Following the publication of the false statements made by Frankel and ZipDX, Avid Telecom received a letter from NUSO advising that it was terminating its relationship with Avid Telecom.

149.    In a direct communication between Avid Telecom and NUSO, NUSO confirmed that it was terminating the relationship because of allegations that Avid Telecom was engaging in illegal robocalling.

150.    Not only had Avid Telecom derived a substantial economic advantage from its business relationship with NUSO, Avid Telecom reasonably expected to continue to derive a growing economic advantage into the future.

151.    As a direct and proximate result of Defendants' tortious interference, Avid Telecom and Lansky have suffered, and will continue to suffer, damages in an amount to be determined at trial but reasonably believed to be in excess of multiple millions of

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

1  dollars.

2      152.    Defendants' conduct was willful, malicious and oppressive and was

3  undertaken with deliberate disregard for Avid Telecom and Lansky's rights and the

4  impact that Defendants' conduct would have on their business. Avid Telecom and

5  Lansky are therefore entitled to an award of exemplary and punitive damages, which

6  they so request.

7                              **PRAYER FOR RELIEF**

8          WHEREFORE, Avid Telecom LLC and Michael Lansky seek judgment against

9  ZipDX, LLC and David Frankel, as follows:

10         A.    An award to Avid Telecom and Lansky in an amount to be proven at trial;

11         B.    An award of punitive damages;

12         C.    Pre- and post-judgment interest of at least 10 percent as authorized by

13  A.R.S. § 44-1201, or at the maximum amount allowed by law; and

14         D.    Any other relief the Court deems just and proper.

15         DATED this 14th day of December, 2022.

16                                      PAPETTI SAMUELS WEISS MCKIRGAN LLP

17                                      /s/Hannah Dolski
                                        Bruce Samuels
18                                      Hannah Dolski

19                                      *Attorneys for Plaintiffs*

20

21

22

23

24

25

26

27

28

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM